UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EMMANUEL A. WINTERS,

    Plaintiff,

v.

J. OVERHOLSER,

    Defendant.

CAUSE NO. 3:19-CV-430 DRL-MGG

OPINION AND ORDER

Emmanuel A. Winters, a prisoner without a lawyer, is proceeding in this case on an "Eighth Amendment claim of deliberate indifference for money damages against J. Overholser in her individual capacity for allegedly failing to provide him with mental health therapy or assist him with receiving psychotropic medication from March 25, 2019, until he was transferred to the New Castle Correctional Facility[.]" ECF 7 at 4. Ms. Overholser filed a motion for summary judgment. ECF 50. Mr. Winters filed a response, and Ms. Overholser filed a reply. ECF 58, 78. The summary judgment motion is now fully briefed and ripe for ruling.

FACTS

Ms. Overholser was employed at Miami Correctional Facility (MCF) as a licensed mental health practitioner. ECF 51-2 at 1. She is not a psychiatrist and did not have the authority at MCF to order medication for patients or transfer patients out of restricted housing. *Id.* at 1, 3, 7. At most, Ms. Overholser had the authority to refer a patient to be seen by a psychologist or psychiatrist or recommend that the patient's condition be

discussed by the patient's treatment team. *Id.* at 7. Throughout 2018, Ms. Overholser occasionally saw Mr. Winters while he was housed in general population. *Id.* at 1. Mr. Winters had been diagnosed with a mental illness but was not considered a seriously mentally ill offender. *Id*. Ms. Overholser was aware of Mr. Winters' history of mental illness and aggressive and disturbing behavior. *Id.* In late 2018, Mr. Winters was placed on suicide watch due to voicing thoughts of self-harm. *Id.* at 1-2.

On February 12, 2019, Ms. Overholser saw Mr. Winters for a follow-up after his discharge from suicide watch. *Id.* at 2. At that time, Mr. Winters had been transferred to restricted housing due to a conduct report. *Id.* Ms. Overholser planned to continue post-suicide watch protocol and for Mr. Winters to have follow-up visits with a psychologist and psychiatrist. *Id.* On February 22, 2019, Ms. Overholser reviewed Mr. Winters' mental health records to determine if there was a contraindication to his placement in restrictive housing. *Id.* Because Mr. Winters had never been diagnosed with a serious mental illness, Ms. Overholser concluded there was no contraindication to his placement in restricted housing. *Id.*

On March 5, 2019, nursing staff noted Mr. Winters was not taking his Zoloft. *Id.*; ECF 35-3 at 190. Ms. Overholser attempted to see Mr. Winters on March 8, 2019, but Mr. Winters exposed his genitals to her, and she filed a conduct report for sexually inappropriate behavior. ECF 51-2 at 3. On March 13, 2019, nursing staff emailed Dr. Walter Pintal, the treating psychologist at the facility, a notification signed by Mr. Winters that he was refusing his medication. *Id.*; ECF 35-3 at 187. Dr. Pintal entered an order to discontinue Mr. Winters' Zoloft prescription. *Id.*

Ms. Overholser saw Mr. Winters again on March 15, 2019, after he submitted a healthcare request. ECF 51-2 at 3. Mr. Winters asked for a different medication, and Ms. Overholser informed him he would be seen by a prescribing psychiatrist once an appointment could be scheduled. *Id.* Ms. Overholser made a referral for Mr. Winters to be seen by a psychologist, but she had no authority over when that visit would be scheduled. *Id.* at 8. Ms. Overholser saw Mr. Winters again on March 25, 2019, and informed him she had referred him to see a prescriber and he was awaiting scheduling. *Id.* at 4. Ms. Overholser followed up with Mr. Winters on March 29, 2019, and Mr. Winters indicated he was fine but that he wanted medication. *Id*. Ms. Overholser informed Mr. Winters he had been scheduled to see a prescriber. *Id.*

Ms. Overholser next saw Mr. Winters on April 8, 2019, after he submitted a request noting suicidal ideation. *Id*. However, during Ms. Overholser's assessment, Mr. Winters denied any suicidal ideation or intention. *Id.* at 5. Ms. Overholser noted Mr. Winters should be monitored more closely and sent an email to attempt to expedite Mr. Winters' scheduling to see a prescribing psychiatrist. *Id.* The next day, Ms. Overholser briefly saw Mr. Winters and he requested removal from restricted housing, but Ms. Overholser informed him he did not have a serious mental illness, so there was no contraindication at that time to continued placement in restricted housing. *Id.* at 5.

On April 10, 2019, Mr. Winters was assessed by psychiatrist Alfredo Tumbali, who prescribed him Celexa. *Id*.; ECF 35-3 at 141-44. Mr. Winters also saw Ms. Overholser that day and asked for removal from restricted housing, but Ms. Overholser again informed Mr. Winters there was no contraindication to his placement in restricted housing because

3

no provider had designated his condition as a serious mental illness. ECF 51-2 at 5. On April 16, 2019, Ms. Overholser saw Mr. Winters and informed him he had been scheduled for an evaluation by Dr. Pintal to determine whether he should remain in restricted housing. *Id*. at 6. This visit was originally scheduled for April 17 but was rescheduled to April 24. *Id.* After evaluating Mr. Winters, Dr. Pintal recommended he be removed from restricted housing due to his worsening depression. *Id*.; ECF 35-3 at 123-25. On April 26, 2019, Ms. Overholser authored a note for Mr. Winters' record noting Dr. Pintal had formally designated him to have a serious mental illness and it was Dr. Pintal's opinion he should be removed from restricted housing. ECF 51-2 at 6.

Ms. Overholser saw Mr. Winters again on May 1, 2019, and informed him that a plan was being made to remove him from restricted housing. *Id.* at 7. On May 3, 2019, Mr. Winters was approved for transfer to the New Castle Psychiatric Unit ("New Castle"), a specialized mental health treatment unit for patients with a serious mental illness. *Id.* Mr. Winters was transferred to New Castle on May 8, 2019. *Id.* Because neither party disputes these facts, the court accepts them as undisputed.

## ANALYSIS

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving

party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit[.]" *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a high standard and "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as

5

to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Under the law:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). When the defendants have provided some level of care for a prisoner's medical condition, to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Synder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Here, no reasonable jury could conclude Ms. Overholser was deliberately indifferent to Mr. Winters's medical needs for "failing to provide him with mental health therapy or assist him with receiving psychotropic medication from March 25, 2019," until May 3, 2019, when he was transferred to New Castle. *See* ECF 7 at 4. Specifically, it is

undisputed that: (1) Ms. Overholser did not have the authority to prescribe Mr. Winters medication; (2) Ms. Overholser referred Mr. Winters to be seen by a prescribing psychiatrist around March 15, 2019; (3) Ms. Overholser had no authority over when that visit would be scheduled; (4) Ms. Overholser took efforts to expedite Mr. Winters' scheduling; and (5) Mr. Winters saw a psychiatrist on April 10, 2019 and was prescribed medication.

Mr. Winters attests he informed Ms. Overholser on numerous occasions that his medication and solitary confinement were causing him mental distress. ECF 58 at 4-9. But it is undisputed Ms. Overholser did not have the authority to alter Mr. Winters' medication or housing arrangement and that she referred Mr. Winters to meet with doctors who had that authority. Mr. Winters further attests Ms. Overholser did not provide him with "appropriate mental health treatment for depression," such as "coping skills, worksheets, CBT, DBT, or any other mental health programming." ECF 58-1 at 6. But this amounts to a mere disagreement regarding the appropriate treatment. *See Ciarpaglini*, 352 F.3d at 331. It is undisputed Ms. Overholser treated Mr. Winters by meeting with him regularly, responding to his healthcare requests, having conversations with him to monitor his condition, and referring him to see physicians when necessary, and Mr. Winters has offered no evidence by which a reasonable jury could conclude this treatment was "plainly inappropriate." *See Hayes*, 546 F.3d at 524. Thus, summary judgment is warranted in favor of Ms. Overholser.

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 50); and

(2) **DIRECTS** the clerk to enter judgment in favor of Ms. Overholser and against Emmanuel A. Winters.

SO ORDERED.

August 19, 2021

*s/ Damon R. Leichty*
Judge, United States District Court